UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHONITA M. BLACK,
    Plaintiff,

vs.

HAMILTON COUNTY PUBLIC,
DEFENDER COMMISSION, et al.,
    Defendants.

Case No. 1:12-cv-503
Dlott, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff brings this action alleging violations of her federal statutory and civil rights and various state law provisions in connection with the termination of her employment. This matter is before the Court on a motion to dismiss filed by the Hamilton County Board of County Commissioners (BOCC) (Doc. 5), plaintiff's response in opposition (Doc. 9), and the BOCC's reply in support of its motion to dismiss. (Doc. 11).

## I. The amended complaint

Plaintiff filed her first amended complaint in this matter on July 24, 2012. (Doc. 2). The amended complaint names as defendants: "Hamilton County/Hamilton County Board of Commissioners/Hamilton County Public Defender Commission"; Shelia Kyle-Reno, individually and in her official capacity; and Kimberly Helfrich, individually and in her official capacity.

The amended complaint makes the following allegations: Plaintiff is an African-American female who was employed by Hamilton County as an Attorney Guardian ad Litem within the Division of the Hamilton County Public Defender from August 2007 until her termination in April 2011. (*Id.*, at ¶¶ 1, 6, 9). Defendant Hamilton County/Hamilton County Board of Commissioners/Hamilton County Public Defender Commission is a unit of local government organized under the laws of the State of Ohio. (*Id.*, at ¶ 2). Plaintiff sues Hamilton County, which is a person under 42 U.S.C. § 1983, through the Hamilton County Board of

County Commissioners, who are named "only in their official capacity pursuant to Ohio Revised Code § 305.12[1]." (*Id.*, at ¶ 2).

Defendant Kyle-Reno was employed by Hamilton County as the Hamilton County Public Defender (HCPD) at the time of plaintiff's termination. (*Id.*, at ¶¶ 3, 8). Defendant Helfrich was employed by Hamilton County as the Director of the Guardian ad Litem Division, which is housed in the Office of the HCPD, throughout the period of plaintiff's employment. (*Id.*, at ¶¶ 4, 7). At all times relevant to this lawsuit, Hamilton County, Kyle-Reno and Helfrich acted under color of law within the meaning of § 1983. (*Id.*, at ¶¶ 2, 3, 4).

When plaintiff was unable to work because of a serious health condition in June and July of 2010, defendant Helfrich failed to provide the medical certification that plaintiff requested, she ordered plaintiff to get a note from plaintiff's physician for requested time off, and she intentionally required plaintiff to cover hearings during plaintiff's medical leave but certified time sheets to reflect that plaintiff was out on medical leave. (*Id.*, at ¶¶ 13-19). Plaintiff was suspended in December 2010 for taking leave for a condition protected under the Family and Medical Leave Act (FMLA), despite following proper procedures for calling off work, and plaintiff was terminated in April 2011 for taking emergency leave for a condition protected under the FMLA. (*Id.*, at ¶¶ 20, 21). Defendant Helfrich also forced plaintiff to endure a working environment that was filled with racial and gender biases and harassment as described in the amended complaint, and Helfrich intentionally made false statements about plaintiff. (*Id.*, at ¶¶ 22-25).

Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) on January 31, 2011. (*Id.*, at ¶ 26). On April 11, 2011, plaintiff was told

---

[1] Ohio Rev. Code § 305.12 states, in part: "The board of county commissioners may sue and be sued, and plead and be impleaded, in any court. . . ."

that she must be present for a meeting on April 13, 2011. (*Id.*, at ¶ 27). Plaintiff requested notice of the issues to be discussed at the meeting and an agenda from Helfrich and Kyle-Reno, but they failed to respond to her request. (*Id.*, at ¶¶ 28, 29). Plaintiff thereafter invoked compliance with the procedural safeguards afforded to her under the due process clauses of the Ohio and United States Constitutions. (*Id.*, at ¶ 29). At the meeting, Kyle-Reno gave plaintiff a notice of termination, which she informed plaintiff was effective immediately. (*Id.*, at ¶¶ 30, 31). Defendants Kyle-Reno and Hamilton County terminated plaintiff without giving her an opportunity to respond to allegations, despite "objective information" showing that Helfrich had a tendency to fabricate statements regarding plaintiff and had published such information, which plaintiff had reported beginning in May 2010 and continuing up to the date of her termination. (*Id.*, at ¶¶ 33, 34).

Based on these allegations, plaintiff brings claims for interference with her rights under the FMLA, alleging Helfrich and Hamilton County, who plaintiff alleges is a covered employer under the FMLA, interfered with her request to use FMLA leave for a serious medical condition (*Id.*, at ¶¶ 36, 37); retaliation under the FMLA, claiming that Helfrich and Hamilton County disciplined her for attempting to engage in protected activity under the FMLA (*Id.*, at ¶¶ 38-39); gender and race discrimination/hostile environment, claiming that Kyle-Reno, Helfrich and Hamilton County allowed her to experience pervasive treatment based on her race and gender that was so severe it altered her work environment and created a hostile work environment, and which she complained about to no avail (*Id.*, at ¶¶ 40, 41); retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., alleging that she was terminated two months after she filed a charge of harassment with the EEOC (*Id.*, at ¶¶ 42-34); violations of her civil rights brought under 42 U.S.C. § 1983, claiming that Helfrich, Kyle-Reno and Hamilton

3

County deprived her of her rights under the Fourteenth Amendment to the United States Constitution, including her right to due process of law (*Id.*, at ¶¶ 44, 45); and state law claims for libel against Helfrich, negligent infliction of emotional distress against Kyle-Reno, Helfrich, and Hamilton County, intentional infliction of emotional distress against Helfrich, and negligent retention and supervision against Kyle-Reno and Hamilton County. (*Id.*, at ¶¶ 46-54).

## II. Motion to dismiss

The BOCC entered a "limited appearance" in this case for the sole purpose of filing a motion to dismiss.[2] (Doc. 5 at 1, n.1). Although the BOCC brings the motion to dismiss in its own name only (Doc. 5), it is clear from the memorandum in support of the motion to dismiss and the reply memorandum (Doc. 11) that the motion is filed on behalf of both the BOCC and Hamilton County. Moreover, in her opposing memorandum, plaintiff addresses whether both the BOCC and Hamilton County are properly named as defendants to this lawsuit despite the amended complaint's listing of "Hamilton County/Hamilton County Board of Commissioners/ Hamilton County Public Defender Commission" as a single defendant. (Doc. 9). Accordingly, in resolving the motion to dismiss, the Court will determine whether plaintiff's claims should be dismissed as to both the BOCC and Hamilton County.

In support of the motion to dismiss, the BOCC argues that Hamilton County is not properly named as a defendant to this lawsuit because the county is not *sui juris, i.e.,* an entity capable of being sued. (*Id.* at 2, n. 2; Doc. 11 at 2-3). Rather, the BOCC asserts that Hamilton County can only be held accountable through its commissioners. (Doc. 11 at 2-3). The BOCC

---

[2] The BOCC alleges it has not been properly served or named as a party defendant in this case because plaintiff has not individually named the county commissioners in their official capacities "as required by law." (Doc. 5 at 1, n.1). The BOCC's motion does not seek dismissal of the amended complaint on this basis, nor does it set forth argument or legal authority to support dismissal on this ground. Therefore, the Court declines to address whether the BOCC has been properly served with process or whether an extension of time to effectuate service under Fed. R. Civ. P. 4(m) is warranted at this juncture.

nonetheless contends that it cannot be held liable in this lawsuit on any claim asserted by plaintiff because it was not involved in any manner in her termination. (Doc. 5 at 2; Doc. 11 at 3-5). The BOCC notes that in her amended complaint, plaintiff characterizes "Hamilton County/Hamilton County Board of Commissioners/Hamilton County Public Defender Commission" as a single "unit of local government...." (Doc. 2, ¶ 2). However, the BOCC contends that the BOCC and the Hamilton County Public Defender Commission (HCPDC) are actually independently functioning governmental bodies and that the BOCC has no role in the operation or policymaking of the office of the HCPD, by statute or otherwise, including with respect to the termination of the HCPD's employees. (Doc. 5 at 2-4). The BOCC contends that because it had no involvement in the termination of plaintiff's employment, it must be dismissed from this lawsuit.[3] (*Id.*; Doc. 11 at 4-5).

Plaintiff indicates in her opposing memorandum that she is suing both Hamilton County and the BOCC. (Doc. 9). She contends both parties were properly served pursuant to Fed. R. Civ. P. 4(j)(2)(A)[4], and she alleges that both parties have been sufficiently apprised of the lawsuit. (Doc. 9 at 2-3). Plaintiff also indicates that she is premising liability against these defendants under 42 U.S.C. § 1983 on the existence of an unconstitutional policy. (*Id.* at 4-5). In addition, plaintiff asserts that the Court can exercise jurisdiction over her due process claim against the BOCC under § 1983 because the BOCC can be sued in any court pursuant to Ohio Rev. Code § 305.12. (*Id.* at 6).

---

[3] The BOCC asserts that plaintiff properly named the HCPD (Kyle-Reno) as a party to this lawsuit, as well as the HCPDC by naming a current employee of the Commission as a defendant in her official capacity. (Doc. 11 at 3).

[4] Fed. R. Civ. P. 4(j)(2)(A) provides that "[a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: "(A) delivering a copy of the summons and of the complaint to its chief executive officer[.]

5

### III. Rule 12(b)(6) standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the complaint need not contain "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As the Supreme Court explained in *Iqbal*: "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks, citations, and alterations omitted).

Following *Twombly* and *Iqbal*, it is well settled that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility is not the same as probability, but rather "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (stating that factual allegations "merely consistent with liability stop[] short of the line between possibility and plausibility").

### IV. The motion to dismiss should be denied.

The Court will initially address whether Hamilton County is an entity capable of being sued. Capacity to be sued in the United States district courts is governed by Fed. R. Civ. P. 17(b), which provides that the capacity of an entity such as a county or county agency to be sued is determined "by the law of the state where the court is located. . . ." Under Ohio law, a county may be sued when it has adopted a charter or alternative form of government, *see* Ohio Rev.

6

Code § 301.22, or through its board of commissioners, *see* Ohio Rev. Code § 305.12. *Williams v. Warren County, Ohio*, No. 1:08-cv-899, 2011 WL 1980015, at *7 (S.D. Ohio Mar. 4, 2011) (Report and Recommendation) (Bowman, M.J.), *adopted sub nom., Williams v. Warren County*, 2011 WL 1980204 (S.D. Ohio May 20, 2011) (Weber, J.)). Hamilton County is not *sui juris,* and suit must therefore be brought against its commissioners for the county's violation of an individual's rights. *Lowe v. Hamilton County Dept. of Job & Family Services,* No. 1:05cv117, 2008 WL 816669, at *2 (S.D. Ohio Mar. 26, 2008) (Dlott, J.) (citing *McGuire v. Ameritech Servs., Inc.,* 253 F. Supp.2d 988, 1015 (S.D. Ohio 2003) (Rice, J.)). Accordingly, plaintiff must pursue any claims she has against Hamilton County through the BOCC, with the exception of any claim she brings under § 1983 based on a custom or policy of the county as explained below.

Insofar as plaintiff seeks to hold Hamilton County liable under § 1983 based on a claim that the individual defendants acted pursuant to an official custom or policy of the county, a county may be held liable even though it is not *sui juris* under Ohio law. *See Stack v. Karnes,* 750 F. Supp.2d 892 (S.D. Ohio 2010) (Frost, J). As the district court explained in *Stack,* a county is a person for purposes of a *Monell* claim under § 1983 and as such is amenable to suit under that provision so long as a plausible *Monell* claim is presented against it.[5] *Id.* at 897-99. *See also Williams,* 2011 WL 1980015, at *8 (although it was unnecessary to address the issue, the Court found *Stack* to be persuasive authority for whether a county may be sued under § 1983 even though it is not *sui juris* under Ohio law). Here, plaintiff has indicated that she is bringing a *Monell* claim against Hamilton County. (Doc. 9 at 5). Defendants have not addressed whether plaintiff has adequately pled the existence of a county custom or policy that led to the deprivation of her constitutional rights. Accordingly, plaintiff's § 1983 claim against Hamilton

---

[5] *Monell v. Dept. of Soc. Servs. of N.Y.*, 436 U.S. 659 (1978), holds that local governments can be held liable for a constitutional deprivation only when a custom or policy was the moving force behind the deprivation.

7

County should not be dismissed at this stage of the litigation.

An issue remains as to whether plaintiff can pursue the claims she presents in the amended complaint under state law and other federal statutory provisions, *i.e.*, the FMLA and Title VII, against Hamilton County through the BOCC. The BOCC argues that these claims against it must be dismissed because it has no statutory authority over the HCPD or the HCPDC, and it did not have any involvement in plaintiff's termination.

A review of the statutory scheme demonstrates that the BOCC exercises no direct control over the HCPDC. The BOCC states that in Hamilton County there is an appointed county public defender commission which administers the HCPDC in accordance with Ohio Rev. Code § 120.13(A). (Doc. 5 at 3). The statute provides that the county public defender commission shall be comprised of "five members, three of whom shall be appointed by the board of county commissioners, and two by the judge, or the presiding judge if there is one, of the court of common pleas of the county. At least one member appointed by each of these appointing bodies shall be an attorney admitted to the practice of law in this state." *Id.* The county public defender commission appoints the county public defender and may remove her from office only for good cause. Ohio Rev. Code § 120.14(A)(1). The county public defender commission also determines "the qualifications and size of the supporting staff and facilities and other requirements needed to maintain and operate the office of the county public defender." Ohio Rev. Code § 120.14(B). The duties of the county public defender are defined by statute and include the duty to "[a]ppoint assistant county public defenders and all other personnel necessary to the functioning of the county public defender's office, subject to the authority of the county public defender commission to determine the size and qualifications of the staff pursuant to division (B) of section 120.14 of the Revised Code. . . ." Ohio Rev. Code § 120.15(B)(4).

The BOCC cites two decisions from this district for the proposition that a Board of County Commissioners is not properly named as a defendant to a suit where the commissioners do not exercise actual control over the operation of a department: *Spangler v. Wenninger*, No. 1:06-cv-229, 2008 WL 4186318 (S.D. Ohio Sept. 3, 2008) (Barrett, J.) and *Burton v. Hamilton County Juvenile Court*, No. 1:04-cv-00368, 2006 WL 91600 (S.D. Ohio Jan. 11, 2006) (Spiegel, S.J.). The plaintiff in *Spangler* sued the Clermont and Brown County Boards of Commissioners under § 1983 and state law in connection with an unreasonable seizure and the destruction of the plaintiff's personal property. The Court acknowledged that in an action brought under § 1983, liability of supervisory personnel and government entities must be based on more than merely the right to control. *Id.*, at *9. Because the plaintiff had not produced any evidence that the County Commissioners had any involvement in the search beyond their right to control the sheriff's departments that conducted the search, the Court granted summary judgment in favor of the Commissioners on the plaintiff's § 1983 claim. *Id.*

The plaintiff in *Burton* was a former employee of the Hamilton County Juvenile Court who brought employment discrimination claims under Title VII against the BOCC. The Court granted summary judgment in favor of the BOCC based on the statutory scheme governing administration of the juvenile courts, which vested authority over juvenile court employees in the juvenile court judge, together with a lack of evidence showing the BOCC was responsible for or participated in the plaintiff's termination. *Burton*, 2006 WL 91600, at *4.

In other cases from this district, however, it has been determined that Hamilton County may qualify as an employer in circumstances such as those alleged here. In *Chambers v. Hamilton County Job & Family Services*, No. 1:08-cv-00683, 2009 WL 799641 (S.D. Ohio March 24, 2009) (Spiegel, S.J.), the Court held that the complaint adequately alleged the plaintiff

9

was an employee of Hamilton County for purposes of the FMLA while working at both Hamilton County Job and Family Services and the Hamilton County Prosecutor's office. In so holding, the Court rejected the defendants' argument that the two departments did not constitute the same employer because they had "separate origins, functions, and management." *Id.*, at *2. The Court reasoned that it would defy "logic and common sense" to separate all county employees by department and deny employees benefits when they transferred from one department to another. *Id.*, at *3. In finding that Hamilton County was the plaintiff's employer, the Court relied on the County's actual practice of honoring sick leave and other benefits earned in one department upon an employee's transfer to another department and evidence that the same policy manual, with the same FMLA policy provisions, applied to the plaintiff while at both HCJFS and the Prosecutor's officer. *Id.*

Similarly, in *Smith v. Grady*, No. 1:11-cv-328, 2013 WL 249677, at *9 (S.D. Ohio Jan. 23, 2013) (Barrett, J.), the Court found it was inappropriate to dismiss Hamilton County from the case on the ground the county was not the plaintiff's employer. The Court in *Smith* found that although some of the allegations in the complaint suggested that the plaintiff, who alleged she was a security officer for the Hamilton County Juvenile Court's Youth Center, was a juvenile court employee, it was plausible that plaintiff was in a category of security guards who were employed by the BOCC. *Id.*, at *10. The Court also found it was unclear which "public agency" could be considered the plaintiff's "employer" for the purposes of the FMLA. *Id.* Accordingly, the Court found that at the pleading stage of the litigation, there was a sufficient economic link between Hamilton County and the plaintiff for the claims against Hamilton County to proceed. *Id.*

The Court finds the decisions in *Chambers* and *Smith* to be instructive here. Unlike

*Spangler* and *Burton*, which were before the Court on summary judgment motions, this case is at the pleading stage and the question before the Court is whether the allegations of the complaint, liberally construed, state a plausible claim for relief. It is unclear at this point which public entity can be considered plaintiff's "employer" for purposes of her claims under Title VII, the FMLA, and the various state law provisions pursuant to which plaintiff brings her claims for relief. As in *Chambers* and *Smith*, it is appropriate to await further development of the record to make this determination. For these reasons, neither the BOCC nor Hamilton County should be dismissed from the lawsuit at this stage on the ground it is not plaintiff's employer.

It is therefore **RECOMMENDED** that the BOCC's motion to dismiss (Doc. 5) be **DENIED**.

Date: 2/25/13

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| SHONITA M. BLACK,<br>Plaintiff, | Case No. 1:12-cv-503<br>Dlott, J.<br>Litkovitz, M.J. |
| vs. | |
| HAMILTON COUNTY PUBLIC,<br>DEFENDER COMMISSIONER, et al.,<br>Defendants. | **REPORT AND**<br>**RECOMMENDATION** |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

    Shonita M. Black
    1329 Spring St.
    Cinti, OH 45202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   X
   ☑ Agent
   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7011 3500 0001 5345 5260

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540